ANDREWS *v.* ANDREWS.

1. That a good plea is unsupported by evidence is no cause for striking it on motion.
2. There being no evidence tending to show that the maker of a deed of conveyance was induced to sign it under the impression that it did not affect her title, or that any misrepresentations were made to her, or that she was overreached, misled or deceived, a charge of the court based on this hypothesis was erroneous. The fraud in which the deed originated was probably one not implying imposition upon the maker of the deed, but a purpose to defeat creditors. April 23, 1890.

Pleadings. Practice. Fraud. Charge of court. Before Judge LUMPKIN. Hancock superior court. October term, 1889.

On September 14, 1888, T. A. Andrews brought complaint for 217 acres of land lying in Hancock county, against W. M. Andrews. The abstract of title was, a deed from J. H. Walker, executor, to J. H. Andrews; from M. E. Andrews, administratrix, to J. R. Hillsman; J. R. Hillsman to M. E. Andrews; and M. E. Andrews to T. A. Andrews.

The defendant pleaded the general issue, and as follows : The premises sued for were the property of his mother, M. E. Andrews, at the time of her death, and her estate has been fully administered by defendant, her administrator, by selling it under proper order. Defendant became the purchaser. He was before the sale, and is now, willing that the property should be divided according to law between the heirs of his mother. The paper relied upon by plaintiff in his abstract of title as a deed from M. E. Andrews to plaintiff, is not a deed; it was never executed as such by M. E. and was never intended as such; it was without any consideration

whatever, was obtained by plaintiff by artifice and fraud for the purpose of defrauding the heirs at law of M. E. of their interest in the premises, and was procured by fraud practiced upon M. E. by plaintiff, in inducing her to believe that the land in dispute was in danger of being sold and wasted, and in order to save the small estate upon which she then resided it was necessary that she should execute to him some sort of paper, which she agreed to do, he agreeing to hold the land for her as long as she lived, and at her death it was to go to her heirs; but at the time of taking the deed plaintiff presented a paper for her signature, stating that it was the one agreed upon, and she, having the fullest confidence in his statement, signed it, and it turned out to be a deed conveying the land in dispute absolutely to him; and this is the deed under which he now asserts title. This fraud was only discovered by her a short while before her death. The consideration of the deed purported to be $600, and at the time it was made the land was worth $2,500; and she would never have agreed to sell it for $600. The deed is void because there is no consideration whatever to support it. Plaintiff recognized that it was void and passed no title to him, by permitting her to control the rents of the land, and by admitting to her that he held it as hers and not as his own; and it was only after her death that he sought to assert title.

Upon the trial the plaintiff put in evidence the deeds mentioned in the abstract of title. The consideration of the first deed was $1,020, and of the second and third $55 each. The consideration recited in the deed from Mrs. M. E. Andrews to plaintiff was $600; its date June 25, 1874. The quantity of land mentioned in this deed is 217½ acres more or less, and among the boundaries is mentioned the "trust land" of M. E. Andrews. Three promissory notes also appeared in

evidence, two by M. E. Andrews to plaintiff, dated
August 30, 1873, due December 1st and 25th, 1873, and
for $150 and $402.93 respectively; the other, dated
March 27, 1872, due January 1, 1873, for $46.56, was
payable to J. R. Whaley or bearer. Also the tax digest
of Hancock county for 1879, showing that W. M.
Andrews, as agent for Mrs. M. E. Andrews of Meri-
wether county, returned 300 acres of land in 107th
district G. M., the district in which the land in dispute
lies, at $750, and as agent for T. A. Andrews 140 acres
of land in the same district at $350. Also two distress
warrants issued by a magistrate of Meriwether county
on December 1, 1876, in favor of T. A. Andrews
against Mrs. M. E. Andrews, one for $97.45 principal,
with interest from December 25, 1874, and the other for
$98.14 principal, with interest from November 25, 1876.
There was evidence for the plaintiff that J. W. Andrews
died in possession of the land in dispute, in 1866. His
widow, M. E. Andrews, continued in possession after
his death. Plaintiff kept store in Warren county two
years, and sent her supplies during that time. He
then moved to Meriwether county; his mother went
with him and carried two small children, and lived with
him until her death, except one year and part of the
next, when she came back to Hancock county. She
rented the land to a witness for one year. The premises
are worth $100 a year for rent.

The defendant testified that he first knew of the deed
under which plaintiff claimed, after his mother's death,
and derived the information from plaintiff, his brother.
Plaintiff was talking to him and another brother, and
claimed that he owned the land, that he had a right to
it, and that his mother owed him. They told him if he
could show them where she owed him for this land, if he
paid her for it, they were willing for him to have it, but
if not they were not satisfied. He said he had kept no

account and could make no showing; that it was for support money that he had spent for her while she was living with him in Meriwether county and before she left Hancock county. He did not give them any evidence at all, showed them no paper, and said he never kept any. He said it was for supporting her while living with him at a place his uncle had given him at his death. It was the home of his uncle during his life, and had at that time been plaintiff's about a year. This uncle was Mrs. Andrews' brother. Plaintiff never exercised any acts of dominion or control over this land that witness knows of, except as her agent. He acted as her agent in Meriwether, and witness as her agent in Hancock. Witness lived upon the place, except a year, and plaintiff never showed any acts of control or ownership while witness was there. When witness was in charge of the place, up to his mother's death, he returned it for taxation and paid the taxes out of the rents; returned it as his mother's; and plaintiff never said anything about returning the land and paying the tax on it as his own, that witness recollects. The paper shown witness (presumably one of the executions mentioned above) he got from plaintiff at plaintiff's house in Meriwether. Plaintiff said he had two executions. A portion of the trust property was witness's, and one Tappan had a mortgage on it, and plaintiff said he had two old executions and may be he could put them in there and save the trust property—defeat Tappan. Witness looked at them and told him he thought they were out of date, but if plaintiff would give them to him he thought he could get them brought into date. Said this because he wanted to get them into his possession, but made no effort to have them revived. His purpose was to get control of them, and he has had them ever since. Plaintiff lived out of Hancock county since 1871 or 1872. He did not own any land in

Hancock; if he did, the land in dispute is the only land he ever owned there. Witness's wife bought ten acres of his mother's land from plaintiff before his mother's death, and he (plaintiff) made her a deed. Witness does not recollect that he returned this very land in 1879 as agent for T. A. Andrews, or in 1875, 1876 and 1878, and did not continue to return it up to 1880. Does not swear that he did not so return it in 1879, for he might have done so. If he returned any as agent, this was the land. If his wife bought any land and plaintiff executed the deed, witness knew his claim to the deed. The first time witness heard of the deed was after his mother's death. His wife took the deed from plaintiff because plaintiff claimed the deed and they did not know whether the deed would be good from one or the other. His wife took the deed and paid plaintiff the money before his mother's death, and witness knew it; she took that deed from plaintiff because plaintiff was his mother's agent at that time. For two or three years witness sent his mother rent, when she was living with his uncle; one year $75, another year $240, and another $120. She had two minor children living with her; they were living with his uncle, and plaintiff was living there and conducting business with his uncle. Might have remitted the money to plaintiff as her agent. The only land his mother ever owned or controlled, except the trust land adjoining it, was the land in dispute, and she had no personal property in Hancock, and no personal property when witness got the executions. The trust land has been divided between the heirs.

Portions of three letters were put in evidence, two by plaintiff to his brother Charles, dated May 2, 1876, and October 6, 1875, respectively, and the other by plaintiff to defendant, dated October 16, 1878. The first stated that the writer and Charles would divide one half of the crop, Charles paying rent out of his

half and the writer out of his, and that this arrangment was to be made with George and Asa. The second stated that the writer had not heard from Miller as to his mother's cotton, and Charles could sell it at White Plains if he could get as good a price for it, and if he sent it to Augusta he had better have it sold on arrival and have the money sent back to him (Charles), as Dr. Burke might put them to some trouble about it; that if Charles thought the cotton would rise, he could ship it in plaintiff's name to Augusta, and they could sell it when they went down; and that the plaintiff could borrow or buy from their mother, and by that means no one could trouble it. The third letter stated that plaintiff had learned from his uncle that defendant had rented plaintiff's storehouse out, and there was some probability of his selling it; plaintiff wished to know about this, and also how much of the rent defendant had collected, and whether defendant had collected a note for Charles' mule; plaintiff would be in a great strain for money that fall, etc., and the land he held "for us" would run a risk of passing into other hands, and for defendant to do the best he could.

Defendant then testified further that the letter from plaintiff to Charles about dividing the rent, referred to this land, and the Asa and George mentioned in it were persons who were cultivating this land. His mother never had anything to do with farming in Hancock county outside of this land, but the trust estate was rented out with this land to tenants, who would tend portions of the two tracts; it was all in common, and there was no separation of the rent or contract as to the two tracts. Defendant also offered evidence to the effect that in 1874, the land in dispute was worth $10 per acre.

The jury found generally for the defendant, and the plaintiff moved for a new trial on the general grounds;

also because of error in charging as stated in the opinion, and of error in refusing to sustain a motion, made after the defendant had closed his testimony, to strike the plea of fraud, the plaintiff insisting that there was no testimony to sustain this plea. The motion was overruled, and the plaintiff excepted.

J. T. JORDAN, by HARRISON & PEEPLES, for plaintiff.

REESE & LITTLE, by J. H. LUMPKIN, for defendant.

BLECKLEY, Chief Justice.

1. The plea of fraud as amended, taken as a whole, would be a defence to the action if established by proof. It does not directly aver that Mrs. Andrews died intestate, or that the defendant is one of her heirs at law, but these matters are inferable from some of the facts alleged in a previous part of the answer, and there was no special demurrer. The plea was full enough to withstand a general demurrer. This being so, there was no error in refusing to strike it on motion, especially as the motion was delayed until the evidence was all in, and was based, not upon any want of sufficiency in the plea, but upon there being no evidence to support it. We have not yet heard of any law that requires a plea to be stricken because it is not sustained by the evidence. That the learned judge who tried the case was also ignorant of it, is strong presumptive evidence to our minds that it does not exist.

2. The fifth ground of the motion for a new trial complains of error in the charge of the court to the jury as follows: " If T. A. Andrews obtained her (Mrs. Andrews') confidence, and if she was overreached, misled and deceived by him, by his fraudulently and falsely representing to her that the paper was not a deed, but was a paper of some other character ; and if, by reason of her confidence in him and the practice of such fraud, if he did so practice it, she was so fraudulently induced to sign the paper under the impression

that it did not affect her title to the property, but was only intended to secure and protect her interest in the land, she would be allowed, if in life, to plead these facts, if they exist, in bar of the deed; and under such circumstances his heir at law would not be estopped from pleading the same things." The objection is, that there was no evidence on which to predicate this instruction. And, indeed, there is none to be found in the record before us. There is no hint or intimation that Mrs. Andrews was overreached, misled or deceived by her son, T. A. Andrews, or that he made to her any false representation, or that she was induced to sign the deed under the impression that it did not affect her title, etc., etc. For aught that appears, she knew the contents and effect of the deed as well as he did. The evidence affords glimpses of a purpose, not to deceive and impose upon Mrs. Andrews, but to aid her in covering this land so as to protect it against creditors. That more on this subject is known than has been yet told from the witness stand is highly probable. We think further inquiry should be made into the reason why T. A. Andrews was treated as the owner of ten acres of the land when the wife of his brother, the defendant, wanted to purchase, and why the tax books show a return by the defendant as agent for T. A. The most certain thing about the case is that the whole truth of it is not out. Let the fraud which was really sought to be perpetrated be exposed, and no imaginary fraud be substituted by vague conjecture. But a still better course would be for these litigants to compose their differences by amicable settlement. We hope they can do so, and that there will be no occasion to try the case again.

The court erred in not granting a new trial.

*Judgment reversed.*